[Cite as *Yim v. Cuyahoga Cty. Bd. of Revision*, 2020-Ohio-6742.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

NICOLE YIM, ET AL.,                              :

   Plaintiffs-Appellants,               :               No. 109470

v.                                                          :

CUYAHOGA COUNTY BOARD OF              :
REVISION, ET AL.,

   Defendants-Appellees.                :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 17, 2020

---

Administrative Appeal from the Board of Tax Appeals
Case No. 2018-2166

---

***Appearances:***

Jeffrey P. Posner, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Reno J. Oradini, Jr., Assistant Prosecuting
Attorney, *for appellees*.

MICHELLE J. SHEEHAN, J.:

{¶ 1}   Appellant property owners Nicole and Hyunjoo Yim appeal from a decision of the Board of Tax Appeals ("BTA") finding the value of their property to

be $138,000 for tax year 2017 based on the sale price of the property on June 28, 2017. On appeal, they raise the following assignments of error:

    I. The BTA erred when it found the second transfer qualified as a presumptively arm's-length sale and used the valuation of it in the MYPLACE summary to establish tax value.

    II. The BTA erred when it found the [appellants] failed to overcome the presumption of the non-validity of the HUD sale as an arm's-length sale.

**{¶ 2}** After a review of the record and applicable law, we find the claims raised by appellants to be without merit and therefore affirm the BTA's decision.

**{¶ 3}** The subject property is located at 16451 Craigmere Drive, Middleburg Heights. The fiscal officer valued the property at $132,500 for tax year 2017. Appellants filed a complaint before the Cuyahoga County Board of Revision ("BOR") requesting the subject property be revalued from its assessed value of $132,500 to $72,000 for tax year 2017, based on the price at which the property was transferred in a Department of Housing and Urban Development ("HUD") sale on May 3, 2017.

**Board of Revision**

**{¶ 4}** We first observe that the statutory transcript before the BTA includes an audio disc of the hearing before the BOR. App.R. 9(B)(1) and (6) require the BOR hearing audios to be transcribed, but appellants did not have the recording transcribed to be included as part of the record on appeal. *See Schwartz v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 106659, 2018-Ohio-4712, ¶ 38, fn. 3. As a result, we rely on the BTA's account of what transpired at the BOR hearing in its decision. As noted by the BTA, appellant property owners were not

present at the BOR hearing and their counsel presented oral argument and documentary evidence on their behalf. Counsel argued the subject property should be valued at $72,000, the price at which it was transferred from HUD to ProsperCle, L.L.C. ("Prosper") on May 3, 2017.

{¶ 5} After the hearing, the BOR rejected the property owners' claim that the HUD sale on May 3, 2017, is the best indication of the property's value on the tax lien date of January 1, 2017. It consequently retained the Fiscal Officer's valuation of $132,500 for the property.

**Board of Tax Appeals**

{¶ 6} The parties waived a hearing before the BTA, and the BTA considered the matter based on the certified statutory transcript and the briefing by the parties. In their merit brief before the BTA, appellants argued the May 2017 sale was an arm's-length sale despite it being a transfer from HUD; they also alleged Prosper renovated the property after it purchased the property from HUD and before it sold it to appellants at a higher price. Appellants claimed that the settlement statement for the May 3, 2017 transfer "shows an anticipated cost of $45,000 to rehab the property." Additionally, they alleged in their brief that "[t]he property had been listed by HUD on the MLS since October 2016, with a starting price of $92,000 and what looks like 2 failed sales thereafter before Prosper bought it." Appellants argued the evidence, i.e., the marketing by HUD, the apparent failure of two purchase contracts, and the poor condition of the property, showed that the HUD sale reflected the value of the property on the tax lien date.

**{¶ 7}** In its merit brief, the BOR argued appellants failed to submit evidence either before the BOR or BTA to overcome the presumption that a HUD sale was not an arm's-length transfer and not indicative of value.

**{¶ 8}** The BTA issued a decision, rejecting the HUD sale as an indication of value and finding the value of the property to be $138,000, based on a subsequent sale of the property on June 28, 2017, from Prosper to appellants.

**{¶ 9}** The BTA observed that, at the BOR hearing, appellants' counsel, although not sworn in, attempted to testify as to the facts and circumstances of the May 2017 sale. Counsel claimed that the property required approximately $45,000 for the rehabilitation of the condition of the residential home on the property. The BTA noted that one of the BOR members commented at the hearing that the record was devoid of any information about the nature of the alleged rehabilitation work and no evidence was presented about the property's condition on the tax lien date or at the time of either the May sale or the June sale.

**{¶ 10}** The BTA found the statutory transcript in this case included evidence of two recent sales: the $72,000 sale from HUD to Prosper in May 2017 and the $138,000 sale from Prosper to appellants in June 2017. The BTA rejected the HUD sale as reliable evidence of the property's value because the property owners failed to provide any testimony from a person with firsthand knowledge of the HUD sale to rebut the presumption that such a sale was a forced sale and not indicative of value. The BTA also found the June 2017 sale to be an arm's-length sale reflecting

the value of the property for tax year 2017.  The property owners appealed the BTA's decision to this court.

**Standard of Review**

{¶ 11}  "A party seeking an increase or decrease in valuation bears the burden of proof before a board of revision."  *Snavely v. Erie Cty. Bd. of Revision*, 78 Ohio St.3d 500, 503, 678 N.E.2d 1373 (1997).  The decision of the BOR can be either appealed to the court of common pleas pursuant to R.C. 5717.05, or appealed to the BTA pursuant to R.C. 5717.01.

{¶ 12}  Here, appellants appealed the BOR's decision to the BTA.  When cases are appealed to the BTA, the burden of proof is similarly on the appellant to prove its right to an increase or a decrease from the value determined by the board of revision.  *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001).  To meet that burden, the appellant "must present competent and probative evidence to make its case."  *Id.*  It is not enough for the appellant to merely introduce evidence that calls the board of revision's valuation into question.  *Id.*

{¶ 13}  In an appeal from the BOR, the BTA "must conduct a de novo review of the evidence and independently determine the taxable value of the property."  *Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, ¶ 63.  When, as here, "the only evidence before the BTA is the statutory transcript from the board of revision, the BTA must make its own independent judgment based on its weighing of the evidence contained in that transcript."

*Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 15, 665 N.E.2d 1098 (1996).

{¶ 14} As for our review of the BTA's decision,

> "[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful."

*Shinkle v. Ashtabula Cty. Bd. of Revision*, 135 Ohio St.3d 227, 2013-Ohio-397, 985 N.E.2d 1243, ¶ 23, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. We defer to the BTA's factual findings, including determinations of property value, provided they are supported by reliable and probative evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. *See also Bethesda Healthcare, Inc. v. Wilkins*, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, ¶ 18 ("[i]t is not the function of this court to substitute its judgment for that of the BTA on factual issues. However, facts determined by the BTA must be supported by sufficient probative evidence").

{¶ 15} Under the first assignment of error, appellants argue the BTA erred when it found the June 28, 2017 sale to be an arm's-length sale. Under the second assignment of error, they argue the BTA erred when it found they failed to overcome the presumption that the HUD sale was not at arm's length and therefore not indicative of value of the property. For ease of discussion, we address the second assignment first.

**HUD Sales**

{¶ 16} The best evidence of the value of real property is an actual, recent sale of the property in an arm's-length transaction. *Health Care Reit, Inc. v. Cuyahoga Cty. Bd. of Revision*, 140 Ohio St.3d 30, 2014-Ohio-2574, 14 N.E.3d 1009, ¶ 21. However, "the price from an auction or forced sale is presumptively not evidence of a property's value, absent proof that the transaction occurred at arm's length between typically motivated parties." *Schwartz v. Cuyahoga Cty. Bd. of Revision*, 143 Ohio St.3d 496, 2015-Ohio-3431, 39 N.E.3d 1223, ¶ 27, citing *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, 23 N.E.3d 1086, ¶ 2; R.C. 5713.04.

{¶ 17} This case involves a HUD sale. As the Supreme Court of Ohio explained in *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489,

> [HUD] serves as a "guarantor of loans which are made by a mortgage lending institution to a mortgagor property owner," so that when the lending institution forecloses on the defaulting owner, the lender "obtains title to the property, often as a result of judicial sale," after which the lender transfers title to HUD "for the amount of the Guarantee."

*Id.* at ¶ 28, quoting *Helfrich v. Licking Cty. Bd. of Revision*, BTA No. 2007-N-414, 2008 Ohio Tax LEXIS 1480, 4 (July 29, 2008). The court further explained that, due to the very nature of a HUD sale, HUD acquires the property "under duress," and its goal is to divest itself the property for the amount of its guarantee. *Id.* at ¶ 29.

{¶ 18} Consequently, the courts have regarded HUD sales as "forced sales" for tax purposes because these sales are typically not indicative of the market value of a property. *Schwartz,* 2015-Ohio-3431, at ¶ 28. "That presumption may be rebutted, however, by evidence that a particular sale was in fact voluntary and did occur at arm's length." *Olentangy Local Schools Bd. of Edn.* at ¶ 2.

{¶ 19} For example, although affirming the principle that "a sale of foreclosed property by HUD is generally regarded as a transaction that is not a voluntary sale between typically motivated market participants," *Schwartz*, 2015-Ohio-3431, at ¶ 28, the court in *Schwartz* nonetheless found the appellant property owner to have successfully rebutted the presumption that the HUD sale was a forced sale. In that case, there was testimony in the record that the property was on the market for three years, a for-sale sign was posted at the property, several offers were made to purchase the property but fell through, and the realty company told a potential buyer that the property would be demolished if not sold. In addition to the testimonial evidence, the appellant property owner also cited other sales on the same street as proof that the market could not bear a higher price at the time than what he paid for the property. The court concluded that, under these circumstances, the property owner rebutted the presumption and concluded that the HUD sale was indicative of the property's value.

{¶ 20} In contrast, here, appellant property owners did not present witness testimony either before the BOR or the BTA. Rather, they relied exclusively on the documentary evidence. One of the documents presented was a settlement statement

for the HUD sale; appellants pointed to line 104 ("Rehab Costs") in the document, which showed a value of $45,000, and argued that this was evidence rebutting the presumption regarding a HUD sale not being an indication of value. Emphasizing the significance of this evidence, appellants claimed the value of the property at the tax lien date of January 1, 2017, was the price of 72,000 for the HUD transfer to Prosper.

{¶ 21} While appellants cites *Schwartz*, 2015-Ohio-3431, for their claim that the presumption regarding the HUD sale could be rebutted, *Schwartz*, as the BTA noted, does not support appellants' claim because that case actually illustrates the importance of witnesses' testimony regarding the facts and circumstances of a HUD sale as well as the condition of the property in order to rebut the presumption. While the record contained such testimony in *Schwartz*, it is lacking in the instant case. As the BTA remarked in its decision, "[n]o such testimony was provided at the BOR hearing and the property owners waived the opportunity to plug this glaring hole at a hearing before this board." While appellants' counsel attempted to testify about the facts and circumstances of the HUD sale before the BOR, counsel was not sworn in and, more importantly, there was no indication that counsel had any firsthand knowledge regarding the property or the HUD sale. *See Corporate Exchange Bldgs. IV & V, Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299, 695 N.E.2d 743 (1998) (statements of counsel before the taxing authorities are not evidence).

{¶ 22} In its decision, the BTA stated that it cannot ascertain the impact of the $45,000 of rehabilitation costs indicated in line 104 of the settlement agreement, noting that no one with firsthand knowledge of the sale testified regarding the circumstances surrounding the sale. The BTA refused to speculate as to the nature of those costs and how they may have impacted the parties' negotiations or shed light on the property's condition and value.

{¶ 23}The BTA's rejection of the settlement statement as evidence reflecting the property's value is not unreasonable or unlawful. "[T]he BTA acts reasonably and lawfully when it declines to wade through documents and parse their significance unaided by relevant testimony." *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, 19 N.E.3d 906, ¶ 31. As in *RNG*, appellants in this case presented documents without offering witnesses to explain how the documentation establishes the value they sought. As the property owners chose not to offer any witnesses who could explain the significance of the amount of "rehab costs" in the HUD settlement statement in rebutting the assumption accorded to the HUD sale, the BTA was justified in disregarding the assertions by counsel about its significance and concluding the property owners had not met their burden. *See Hardy v. Delaware Cty. Bd. of Revision*, 106 Ohio St.3d 359, 2005-Ohio-5319, 835 N.E.2d 348, ¶ 14 (the court will not disturb the BTA's sound determination about the proper weight to be given to the property owners' documentary evidence or the significance of the owners' failure to offer any testimony). The BTA cannot be faulted for refusing to speculate in the absence of

any witnesses' testimony, and its duty to independently weigh the evidence permitted it to reject the HUD sale as indicative of value. *Hersh v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 109035, 2020-Ohio-3596 (appellant, unlike in *Schwartz*, failed to provide testimony from a witness with firsthand knowledge of the HUD sale, which may have rebutted the presumption that such sale was a forced sale).

{¶ 24} The documentary evidence presented to the BOR in this case also included the property's Multiple Listing Service ("MLS") listing from the HUD sale. The document shows that the property was listed at $82,000 and sold at $72,000 on May 3, 2017. The BTA found the MLS listing to be unreliable hearsay, reasoning that "[t]he MLS listing was no substitute for testimony from someone with firsthand knowledge of the HUD sale and does not rebut the presumptions accorded to such sale." Hearsay is an out-of-court statement offered in evidence "to prove the truth of the matter asserted." Evid.R. 801(C). While MLS listings have been offered as evidence to show that a property is listed or sold at a certain price, appellants submitted the MLS listing in this case to show the property's market value was its sale price of $72,000 despite the sale being a HUD sale — i.e., to prove the truth of the matter asserted. Accordingly, the BTA did not abuse its discretion in finding the MLS listing hearsay when it was offered as evidence to prove the property's true market value and to rebut the presumption that the $72,000 HUD sale did not reflect the value of the property on the tax lien date. *Hersh* (MLS listing for the

property from a HUD sale was unreliable hearsay as it was offered to prove the truth of the matter asserted). The second assignment of error is without merit.

**June 28, 2017 Sale**

{¶ 25} Regarding the June 28, 2017 sale from Prosper to appellants, the BTA stated in its decision that it was undisputed that appellants purchased the subject property from Prosper for $138,000 on June 28, 2017. It noted that, although appellant's counsel suggested the character of the property changed between the tax lien date of January 1, 2017, and June 28, 2017, the record contained no competent, credible, and probative evidence to support counsel's assertion. The BTA found the property owners failed to affirmatively demonstrate that the June 28, 2017 sale was not a recent and arm's-length sale reflecting the property's value on the tax lien date. Consequently, the BTA found the value of the property to be $138,000. Under the first assignment of error, appellants argue the BTA erred when it found the June 28, 2017 sale to be an arm's-length sale and used the sale price to establish the property's tax value.

{¶ 26} It is long settled that "when the property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.'" *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, quoting R.C. 5713.03. However, a party can rebut this presumption by challenging "whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that

particular sale." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13.

{¶ 27} The certified statutory transcript in this case includes documents to show a sale of the property from Prosper to appellants on June 28, 2017: the Cuyahoga County Parcel Listing that lists a sales price of $138,000 on June 28, 2017, and a Cuyahoga County Property Summary Report (obtained through Cuyahoga County MyPlace website) which also shows a transfer from Prosper to appellants at a price of $138000 — and the Report's Transfer History section shows the most recent transfer was dated June 28, 2017.

{¶ 28} It does not appear from our review of the record that appellants disputed the arm's-length nature of the June 28, 2017 sale. The merit briefs of the parties only addressed the HUD sale. However, on appeal before this court, appellants argue that there is insufficient evidence that the June 2017 transaction was an arm's-length sale because the record does not contain a deed, conveyance fee, purchase agreement, or broker's documentation for the sale, citing *Utt v. Lorain Cty. Bd. of Revision*, 150 Ohio St.3d 119, 2016-Ohio-8402, 79 N.E.3d 536, and *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, 73 N.E.3d 486.

{¶ 29} The Supreme Court's decision in *Dauch v. Erie Cty. Bd. of Revision*, 149 Ohio St.3d 691, 2017-Ohio-1412, 77 N.E.3d 943, which discussed both *Utt* and *Lunn*, is instructive here. In *Dauch*, the court reiterated the presumption that "if the proponent of a sale demonstrates that the sale occurred, and the sale on its face appears to have been at arm's length, then the opposing party has the burden of

going forward with rebuttal evidence." *Id.* at ¶ 16. Further, the court explained that the burden on the proponent of a sale is "a relatively light initial burden," *id.* at ¶ 17, citing *Lunn* at ¶ 14; the court stated the proponent of a sale is only required to provide "basic documentation of a sale," *id.,* citing *Utt* at ¶ 13. A deed and conveyance-fee statement, or a deed and purchase agreement would satisfy this requirement. *Id.*

{¶ 30} However, the court stressed that these particular documents were not required in every case, *id.* at ¶ 18; as the court had previously stated in *Utt,* the absence of a deed or purchase agreement is not fatal if no party disputes the timing or price of the sale and the documents provided demonstrates a sale that on its face appeared to be at arm's length. *Id.,* citing *Utt* at ¶ 14. The court in *Dauch* reaffirmed the notion that "a proponent may satisfy his initial burden with less documentary evidence if there is no real dispute about the basic facts of the sale." *Id.,* citing *Utt* at ¶ 14 (holding that the BTA did not abuse its discretion in recognizing a rebuttable presumption concerning the sale because the parties did not dispute the basic facts of the sale at the BTA) and *Mason City School Dist. Bd. of Edn. v. Warren Cty. Bd. of Revision*, 138 Ohio St.3d 153, 2014-Ohio-104, 4 N.E.3d 1027, ¶ 31 ("[t]he parties have never contested the fact or timing of the sale or the amount of the sale price. Accordingly, we accept the stated facts concerning the 2006 sale for purposes of

deciding this appeal, despite the absence of the usual elements of proof, such as the conveyance-fee statement, the deed, and the sale contract").[1]

{¶ 31} While appellants dispute the arm's-length nature of the June 2017 sale on appeal, our review of the statutory record before the BTA does not reflect that appellants disputed the June 28, 2017 sale as being an arm's-length sale. In their brief before the BTA, appellants only argued that HUD was an arm's-length sale and, being closest to the tax lien date, it was the best indication of the property's value. We note furthermore that appellants, who were parties to the June 2017 sale and possessed firsthand knowledge of the sale, did not offer any testimony before either the BOR or BTA to rebut the presumption and support their contention that the June 2017 was not at arm's length. Pursuant to *Dauch*, therefore, the BTA did not abuse its discretion in recognizing a rebuttable presumption concerning the June 2017 sale. The first assignment of error lacks merit

{¶ 32} Appellant property owners failed to meet their burden of presenting competent and probative evidence before the BTA to prove the value they sought.

---

[1] Appellants filed a notice of additional authority, citing *Cleveland Mun. School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 109028, 2020-Ohio-5427, which was released after the oral argument of this case. Appellants direct us to paragraph 25 of the opinion, which stated that "[t]he conveyance fee 'statement has been important in * * * cases involving the sale price of real estate as we have often justified applying the sale-price presumption to the amount the property owner reported on the conveyance-fee statement.'" *Id.* at ¶ 25, quoting *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 159 Ohio St.3d 283, 2020-Ohio-353, 150 N.E.3d 877, ¶ 44. The case involved a transfer of limited liability company membership interests, and this court reasoned that documents such as the conveyance fee statement and purchase agreement were necessary to evince the sale price of the property in such a case. *Cleveland Mun. School Dist. Bd. of Edn.* is not applicable here.

Conducting a de novo review, the BTA made its own independent judgment based on its weighing of the evidence contained in the statutory transcript, which included the June 28, 2017 sale, and determined its sale price best reflected the value of the property for tax year 2017. Having reviewed the record and the applicable law, we do not find the BTA's decision to be unreasonable or unlawful. Therefore, we affirm.

{¶ 33} Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Board of Tax Appeals to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR